ALBERTO H. CAFFEE, PLAINTIFF, *v.* WILLIAM OTTMAN
AND ANOTHER, AS EXECUTORS OF JACOB OTTMAN, DECEASED,
DEFENDANTS.

*Sales — acceptance of goods — when they are accepted under an agent's assurance to
indemnify against defects.*

Jacob Ottman, by his confidential employee, Bonnier, made an executory contract
to manufacture playing cards for one Caffee, according to certain designs, and
thereafter died. Substantially all the business was transacted by Bonnier.
When the cards, the defects in which were apparent, were delivered Caffee
objected that they did not comply with the contract. Bonnier pressed Caffee to
accept the cards and sell them, and promised to make good any loss resulting
from the defects therein, in accordance with which request Caffee received the
cards and sold a quantity of them.

Upon the trial of an action against Ottman's executors to recover damages for a
breach of contract the court, after evidence of the statements of Bonnier had
been given, struck out the testimony.

*Held,* that this was error.

That Ottman was bound by the statements of Bonnier.

That Caffee had a right to show that his receipt and acceptance of the cards were
predicated upon the promises of Bonnier that he should not suffer loss by those
acts.

EXCEPTIONS of the plaintiff Alberto H. Caffee, directed to be
heard in the first instance at General Term, the complaint having
been dismissed after a trial at the New York Circuit before the
court and a jury.

*I. D. Warren,* for the plaintiff.

*A. G. Fox,* for the defendants.

VAN BRUNT, P. J.:

This action was brought against an executor to recover damages
for an alleged breach of an executory written contract, entered into
by his testator and the plaintiff to manufacture certain merchandise;
the plaintiff alleging that the deceased failed to keep his contract in
every respect, and that he had suffered damages to a large amount, for
which he prayed judgment.

The defense relied upon seems to have been that the plaintiff by
receiving the cards, offering them for sale and selling large quanti-
ties of them, accepted them, and no cause for damages for the

alleged defects, which were confessedly visible on inspection, survived the acceptance, and this seems to have been the ground on which the ruling of the court below was based.

It appears that all the conversations in reference to this contract were had with one Bonnier, an employee of the deceased, and it is claimed by the plaintiff that whatever receipt of the goods there might, in fact have been, resulted from an arrangement entered into between Bonnier, claiming to represent the deceased, and the plaintiff, which did not amount to an acceptance of the goods.

The evidence of what took place between Bonnier and the plaintiff was excluded, and hence the goods having been received and partially sold by the plaintiff, the court held that there had been an acceptance under the contract, and their palpable failure to comply with the contract formed no basis for this action.

We think this was error. The plaintiff had a right to show the facts and circumstances under which he received the goods in question. As already stated, all the conversations in reference to this contract were had with Bonnier. In fact, Bonnier was held out to plaintiff as the confidential employee of the defendant. It was to him that the plan upon which this merchandise was to be manufactured was divulged by the plaintiff, and it was according to such divulged plan that the contract was to proceed.

Upon the tender of the goods and the examination of the same the plaintiff declared to Bonnier that the goods did not come up to the contract, specifying the defects, and Bonnier replied that he didn't know that they did not come up to the contract, but added " Don't hold us too closely to that ; " that he knew a party who would take them all off the plaintiff's hands at once, and that he would sell every one of them for him and get another order for more cards ; and that the plaintiff told him he would have nothing to do with it as it stood ; and that Bonnier pressed the plaintiff because his name was printed upon the merchandise, and they could not sell it or offer the same for sale, and promised that they would make another lot for the plaintiff.

It was under these circumstances that the cards were accepted, as far as they were accepted and offered for sale, Bonnier stating that all their expenses they would see him paid, and whatever money

was paid out they would see them paid back and return, besides, his profit. It is true that this latter testimony was stricken out. But it is to be considered upon the question as to whether the motion to dismiss was properly granted.

We think it was error to strike out testimony of this character. It is apparent from the evidence that Bonnier was the *alter ego* of the deceased, that he had charge of this business, and whatever representations he made to the plaintiff in order to get him to take possession of the goods was competent upon the question whether he had received them without objection so as to deprive him of his right to claim damages for the breach of his contract.

It certainly would be establishing a harsh rule to hold, when an employee is presented to a contracting party with the apparent authority to take charge of a negotiation, and proceeds with it to the very end, that the principal, when he is sought to be charged with the acts of the employee, should be allowed to say "You must prove express authority from me for the employee to bind me." In all departments of mercantile business employees occupying particular positions are presumed to have the authority to do all that is customarily done in those positions; and it is the application of this rule to the relations of Bonnier to the deceased that makes his declarations and acts evidence. If the defendant was alive, he could not testify to any transaction he had had with the plaintiff. He seems to have been by upon one or two conversations, but nothing was said to him or by him. The whole business was transacted by Bonnier by and with his authority, and such business was not terminated until the acceptance of these cards by the plaintiff. Any complaint which the plaintiff had to make in respect to the goods would be, under the circumstances, naturally made to Bonnier, as he was the only person with whom he had any dealing, and he naturally supposed, when he refused to receive these cards, any statements made to induce acceptance were made with authority.

We think, therefore, that the motion for a new trial should be granted, with costs to plaintiff to abide the final event.

O'BRIEN and PATTERSON, JJ., concurred.

Motion for a new trial granted, with costs to plaintiff to abide the final event.